Good morning, your honors. My name is Carlos Villanueva on behalf of the petitioners. This is a similar situation of voluntary departure. As the court may know through the briefs, the BIA decision of 4-27-2004 denied the application's cancellation for removal and granted them 30 days to depart the United States. However, a month before, in March, the female petitioner, a young woman, Indian woman from Mexico, gave birth to a child, had a tumor in her uterus. They had to remove it. They gave her, she was given a hysterectomy. And she got a letter from the doctor. The doctor told her, under no circumstances should you travel outside the United States because of your medical condition. You made a timely motion to reopen? Yeah, we made a timely motion to reopen. The government concedes that. And the government issued a decision which says? Because you failed to depart within 30 days, you're out. That's the September 24th? Yes, sir. And basically, this is a case of a shield, which is a protection like voluntary departure, like any other form of relief, like cancellation, where the government uses that as a sword against the same parties. But first of all, Your Honor, our brief, we believe that the BIA had no authority to issue voluntary departure in the first place. Well, strike that. They did it wrong. They were required under INA Section 240B-3 and 8 CFR to require the respondents, in that case the petitioners, to post a $500 bond. That's mandatory. And the consequence of not posting the $500 bond, just like if you go to court, is it becomes a removal order. And if you have a removal order, then you have 90 days from the decision in which to file the motion to reopen. What's your authority for the proposition that it becomes a removal order if there's no bond? It's in the statute itself, Your Honor. It automatically becomes an order of removal. And what statute are you talking about? You could look at, I don't have it in front of me. It could be in 240A and 240B itself. So we're going to go on a snipe hunt now looking for the statute. I apologize, Your Honor. But there are other provisions. It's very helpful when people come before us and they say, we got a Gonzales case. Yeah, well, I really apologize. And then when you tell us that something automatically becomes a removal order, when we ask you what statute that is, you say it's a statute. You don't know which one it is. I apologize. I apologize. In any event, they assumed that you were correct in their decision denying you reconsideration or reopening, whichever it was. Yes. And they said, well, assume that you're right and that you are eligible. And then they were supposed to weigh the equities and see whether it was extreme hardship. And do you find any imperfection in the way they performed that balancing and weighing? Yes, Your Honor. We feel that they didn't look at the evidence quite as they're supposed to do under the. Did they in their decision, did they identify the factors as they're supposed to do? I don't we don't believe we did, according to our position. We don't believe that they identified all the factors that they're supposed to. They didn't give it the analysis it was required. As the case of Sergio Perez indicates. And they didn't look at all the relevant factors in the case. I believe in this case, the BIA just gave it a short shift and really didn't want to consider too much of the case and just currently stated, well, because you didn't file because you didn't leave the country, which she couldn't do anyway. She had no intention of leaving, which is a requirement of voluntary departure, as well as she couldn't go because of her. What the doctor told her not to leave because of medical conditions. She was in a serious medical situation. Assuming that the government, if you were correct and they did not properly weigh the factors and write the type of decision they were required to do when they denied your motion to reopen. What is the remedy to file a petition for review before the Ninth Circuit? You're here already. That's right. So what do you want? What do you want us to do? Oh, we would like you to what we'd like your honor. We'd like you to overturn the denial of the motion to reopen by the board and direct them to reopen, direct them to reopen so that we can present this evidence to the court. It's actually new evidence. It's never been heard of before by the court. The issue of the mother's now medical condition, how that impacts the U.S. citizen children if they have to go to this small village in Mexico. Do you want to save the rest of your time? Yeah, I really want to. Thank you. Thank you. Thank you. The court has responded to Alberto Gonzalez. The citations the court is seeking are 8 CFR 1240 26 voluntary departure, basically 840 26. I have a question about that statute and what happens if you don't post bond. I think a couple of our dispositions have previously asked the BIA to take a position on that. And the BIA hasn't. And even in this case, it just says, assuming that respondent's argument is correct. Shouldn't the BIA actually take a position on how that statute should be interpreted? Well, yes, of course. But the fact is, by the fact that they didn't require a bond, he gets a benefit. He gets the benefit of not having voluntary departure, as what we were discussing in the last case. What was supposed to be a benefit turns out to be a great detriment when the government does you the favor. You get out of that great benefit if there's no bond post. It's rather an odd legal system. Well, he didn't decline. He specifically appealed the denial of voluntary departure. And you're right. The board thought it was doing him a favor, granting his request. And now he's complaining that because he wasn't forced to post a bond, he the voluntary departure doesn't apply. And it's a benefit to be not to have voluntary departure, because you can then exercise your rights. But the fact is, he requested it and he was granted it. And fortunately, he didn't. Fortunately, there was no bond. But that doesn't make me. But it doesn't matter for this case at the moment. Judge Wardlaw was suggesting that it might be nice if the board resolved the legal question so we didn't keep getting it in every case. Again, happy to take that back to my client. The problem really is, is that say they get voluntary departure and they don't want to take it. And so they don't post the bond and they don't depart. What is the consequences of that? Because it's transformed into a removal order. So, therefore, do the consequences, you know, the 10-year statutory bar, et cetera, even come into play at all? Yes, because then they're being removed. The government gets it both ways. No, because then they're being removed subject to an order of removal. And an order of removal renders them ineligible for this. Voluntary departure puts, you know, gives them 30 days to avoid those consequences. But once the order of removal is entered, those consequences kick in. The voluntary departure really isn't a punishment because the voluntary departure entered in lieu of an order of removal allows them to leave without these liabilities. If they're not granted voluntary departure and they get a final order of removal, those consequences attach immediately instead of 30 days later. So it really isn't a punishment. Well, what statute provides that? That's ‑‑ I mean, I keep getting told by the Supreme Court we're supposed to do these Ventura remands. So we remand for the BIA to enlighten us on the rule, and the BIA doesn't. And so, I mean, no wonder these poor aliens are confused and their attorneys are misfiling. Well, I'm not sure what ‑‑ Well, tell me which statute creates the same consequences from the order of removal as the failure to voluntarily depart. That I don't have. First, and I understand that you want ‑‑ you are interested in answering the big picture, but it was not an issue raised in this case. And I'm not ‑‑ I can't come up with a number for that immediately. All right. Well, let's get to this case then. You are required, I think you understand, to ‑‑ and when you deny a motion to reopen or reconsider, to give the reasons and to explain the balancing that you engaged in. And it ‑‑ well, not if it's denied as untimely. If it's denied for one reason. Well, this wasn't denied as untimely. This was denied because they were given the ‑‑ Oh, right. Because they weren't ‑‑ they were given ‑‑ Well, let me make it simple for you, the reason they were denied. They were supposed to weigh the equities. And they were supposed to consider all of the reasons to grant and not to grant. And if you would like the cases for that, the cases are Medina Morales versus Ashcroft, Mosavian versus Ashcroft, Mohammed versus Gonzales. We have repeatedly had cases saying that when you deny a motion to reopen, you give the explanation of the reasons and you say the reasons on one side, the reasons on the other side. What the board said here was, we've considered the respondents didn't leave the United States after successfully appealing the denial of their voluntary deportation application. In balancing these factors, we conclude they've not convinced us that they should be reopened. Now, do you think that meets our standards? Well, it meets the Supreme Court standards, Your Honor, because ‑‑ Well, you're in the Ninth Circuit, and I was asking you whether it met our standards. Or are you telling us you don't like our standards? No, absolutely not, Your Honor. We abide by them and we respect them. Okay. Well, does it meet our cases? Well, yes. Because if you can deny it on one ground, you don't need to address the other ground. And that's Baga Masbad. And they denied it entirely on the aliens' failure to depart as ordered. And, again, they were represented by present counsel on reopening. They did not ask. They did not go to the district director and say, I'm sick, I can't leave, can I have an extension? The district director has the authority to grant the extension. I hope we're not claiming ineffective assistance of counsel here. But he didn't go. He just ignored the voluntary departure. Maybe he didn't tell his lawyer about his wife being sick. It's possible. But the point is, these ‑‑ there are certain regulations, and the Board has a fairly large caseload, and they need to have these deadlines abided by and not reopen for different reasons. So which case is it that says that you could ignore all of our cases that talk about balancing and discussing the equities and the factors if you're getting rid of the matter simply on timeliness? I didn't say you could ignore all the balancing, but you don't have to enter it if you are going to deny it for another reason. Right. That's Baga Masbad. Baga Masbad. B-A-G-A. And your brief at what page? I don't know if it's in there. I don't either. That's why I asked. But the fact is they don't need to enter into alternative reasonings if there's another basis to grant or deny. That's Baga Masbad. B-A-G-A-M-A-S-B-A-D. B-A-G-A-M-A-S-B-A-D. And it's not your brief. Do you have a citation for it? I will get that. I'll have it for you before. Well, since that seems to be the principal issue in the case, I would have thought it would be in your brief if it were really that significant. They cited Ar-Rosal in this proposition in their brief. You didn't come back with anything on Ar-Rosal or Baga Masbad. The fact is, well, again, this is the issue here I think we need to focus on is on – well, forgive me, have I answered your question? This case, is this the Ninth Circuit or a Supreme Court case? Well, we're still in the Ninth Circuit. No, Baga Masbad. Baga Masbad. It's a Supreme Court case. You see, in their brief, they did argue under Ar-Rosal that the BIA ignored this Supreme Court's mandate summed up in Ar-Rosal to explain its reasoning, balance factors, and avoid a conclusory dismissal of favorable factors. And you never addressed Ar-Rosal, I don't think. Well, to the extent that what they argue here is the failure to exercise discretion on the hardship factors, the Board did not reweigh them. But, again, we're here on reopening, and the Board did notice that. I mean, basically, you've got exactly the same factors except the wife now has an undiagnosed condition. Well, those were the – that was the basis for the reopening. That is the basis for reopening. There's no discussion or weighing of those equities that are presented as a basis for reopening. I would refer, Your Honor, to page – the first paragraph on page 3 of the administrative record. This Board has held that a party who seeks to reopen proceedings to pursue a discretionary granted relief bears a heavy burden of demonstrating that if his motion were granted, the new evidence would likely change the results in the case. They – that is their conclusion, that this – the information on reopening is unlikely to change the results in the case. Well, they're not – the cases, they're not supposed to simply express a conclusion. They are supposed to – as Aracel and the other three or four cases I mentioned to you said, they are supposed to consider and address in the entirety the evidence submitted. But they have that. Address means to address it. Your Honor, they – They are supposed to, quote, issue a decision that fully explains the reasons. This requires weighing both favorable and unfavorable factors by evaluating all of them, assigning weight or importance to each one separately, and then to all of them cumulatively. Your Honor – Where is that done in this decision? That happened in the initial Board decision. Three members – But we're talking about what you're supposed to do when you deny a reopening. You don't have to on reopening because there's a heavier burden. You have to because these cases say you have to. Did they say that on reopening? Yes. Okay. I would submit that the Board's saying – we're saying that the fact of your wife's undiagnosed illness, and it's still undiagnosed, is not sufficient. It's not as important as you – as the fact that you didn't meet your voluntary departure deadline. Well, there were two issues here. They didn't meet their heavy burden on reopening, and they didn't honor their agreement to voluntarily depart. But on reopening, when they have had a full and fair hearing on the merits, on the good and bad, the weighing of the equities, they've had it twice, before the immigration judge and before three members of a panel, which issued a four-page, individualized decision, identifying all of the factors. There's no complaint about that. That is final. They didn't seek review. We're only talking about the motion to reopen and what your obligation is when deciding a motion to reopen. Well, under even the law of this circuit and ABUDU, all ambiguities, and I disagree with counsel's assessment of ABUDU. ABUDU held to the contrary. All factual ambiguities do not have to be on reopening resolved in favor of the alien. There is a heavy burden on reopening. The board said here, we've looked at it. We don't think it was met. And in any event, it's untimely. And there's no question that it is untimely. Unless you want to do you want to address the voluntary departure? No. What I'd like you to do, since we've used up your time, is before you leave here, we have a library. If you will go get us the citation and give it to the clerk. I will do that immediately. Thank you. Thank you very much. Thank you, Your Honors. I seem to be stuck. Counsel, do you have anything further you need to say? I just did just a couple points, Your Honor. One, just to respond to Justice's question with respect to where's the law that it says that voluntary departure automatically becomes a removal order if the conditions aren't met. It's in our brief. It's 8 CFR 1240.26. In parentheses, small c, three. And also, just to let the Court know, we took this case. They came to our office two weeks before we filed this motion to reopen in July, which is within the 90-day period after the April 27th BIA decision. Just to let the Court know. Thank you, counsel. The case just argued will be submitted. The next case for argument is Ennis v. Ennis. Good morning, Your Honors. May it please the Court. Susan Horner from Miller, Monson, Peschel, Palachuk, and Hoshaw in San Diego on behalf of the appellants Reed and Delpha Ennis and Commercial Conservancy. This is an ERISA case involving a pension plan dispute that involves a profit-sharing plan that the Ennis Enterprises Company had from 1970. 1972. Actually, there was a prior plan. That's why I was stumbling on the date there. But the profit-sharing plan was rolled into the Ennis Steel Plan in 1972. I thought it might be useful to just briefly recap some of the major points in the factual history because it involves a long period of time. Is this an ERISA case? Yes, it's an ERISA case. So a federal common law equitable estoppel claim falls under the umbrella of ERISA? Yes. The federal common law equitable estoppel Greeney action, which I believe Your Honor sat on the Greeney panel back in 1992. I wrote it. Oh, okay. That is applied to the ERISA enforcement scheme. But is it an ERISA claim? Because it says statute of limitations implications as far as I know. It's not an ERISA cause of action. That's right. It's an equitable principle that's applied to the civil enforcement scheme of ERISA, which, of course, is defined in the statute. This is a prelude to asking the question, where do we look for the statute of limitation? And if it's not an ERISA claim, it may be something that you look outside of ERISA for in terms of statute of limitation. The particular action brought here was under the second amended complaint. We went through several versions. As the court knows, we had several orders along the way. The only thing that survived was federal common law equitable estoppel. Am I right? Yeah. Actually, it was a federal common law. That was Judge Lorenz had.
judges: Reinhardt, Trott, Wardlaw